**TEXACO PANAMA, INC.**

v.

**SUN OIL COMPANY OF PENNSYLVANIA.**

**Civ. A. No. 82–0888.**

United States District Court,
E.D. Pennsylvania.

Aug. 19, 1983.

Philip A. Tordella, Krusen Evans & Byrne, Philadelphia, Pa., for plaintiff.

Thomas E. Murphy, Philadelphia, Pa., for defendant.

MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

In this admiralty action, the narrow issue raised by cross motions for summary judgment is whether shifting time from anchorage to discharge berth is to be included in demurrage.[1] The parties have stipulated that they entered into a Tanker Voyage Charter Party on the Abstankvoy Form by which Sun Oil Company of Pennsylvania (defendant) chartered the M/T Theodohos from Texaco Panama, Inc. (plaintiff). The agreement provided for 72 hours of laytime.[2] Sixty-two hours of that time was used during the loading operation. When the ship approached its destination it could not immediately get into an unloading berth. While waiting at the anchorage, the remaining allotted laytime elapsed, thus putting the ship on demurrage. After the commencement of demurrage, the ship shifted from the anchorage to the discharge berth. The parties agree that the time for shifting was nine hours and twenty-five minutes. They also agree that, if the time is included in demurrage, damages would amount to $7267.97. The sole question presented is whether the time used is to be considered demurrage or whether the agreement of the parties contemplated exclusion of the shifting time from demurrage.

The general rule is "once on demurrage, always on demurrage," so that, after the expiration of laytime, there can be no interruption in the accumulation of additional charges unless specifically excluded by the parties. The rigidity of the maxim, however, has declined in recent years. 2B *Benedict on Admiralty* § 41 (6th ed. 1983). It should not be followed when the Charter is specific and application of the traditional rule runs counter to the expressed intent of the parties. *Atlantic Monarch Shipping*

---

1. Demurrage is liquidated damages calculated at an hourly rate for time spent loading and unloading in excess of laytime. 2B *Benedict on Admiralty* § 31 (6th ed. 1983).

2. Laytime or laydays is the period of time allowed under the charter for the charterer to load and unload the vessel. *Id.*

*Co., Ltd. (M/T Atlantic Monarch)*, SMA 939 at 9 (NY Arb. 1975).

■ Paragraphs 7 and 8 of Part II of the Charter are of primary importance in determining the meaning of the agreement. Paragraph 8 defines demurrage as "all time that loading and discharging and used laytime ... exceeds allowed laytime ...." Since shifting involves neither loading nor discharging, it can only be included in demurrage if it is "used laytime." Paragraph 7 specifically provides that "[t]ime consumed by the vessel in moving from ... discharge port anchorage to her ... discharge berth ... will not be counted as used laytime." The plain meaning of the two provisions suggests that shifting time was not intended to be included in demurrage. *R/A Trajan (Hilmer Reksten Managers) (T/T Fabian)*, SMA 1492 at 7–8 (NY Arb. 1980).

In order to reach a contrary result, one would have to read the words "all time" as superceding the narrower definition of laytime as provided in paragraph 7. Nothing in the agreement suggests that the parties intended to adopt the unusual practice of having their general words control the specific ones. Accordingly, the standard rules of construction will be followed and the paragraphs, read together, will be interpreted to mean that shifting time was intended to be excluded from "used laytime" in calculating demurrage.

This conclusion is supported by reference to the Sun Lightering Clause incorporated in the charter. That clause expressly exempts shifting time from demurrage when it is necessary to lighter the vessel at anchorage before proceeding to the discharging berth. While the instant case did not involve a lightering operation, the circumstances are analogous, and the totality of circumstances suggests that the parties intended to exclude shifting time from demurrage in both situations.

In addition, since the rates are calculated on the basis of complete voyage from load port to discharge port, the plaintiff has been compensated for the time to move from anchorage to discharge berth unless the shifting operated to extend the total distance of the voyage. *Neptunea Astro Oceanico S.A. (The Michael "C")*, SMA 1658 (NY Arb. 1982) p. 300; *Cove Venture (M/T Cove Leader*, SMA 1653 at 230 (NY Arb. 1982); *Mammoth Bulk Carrier (M/T Viborg)*, SMA 1062 at 5 (NY Arb. 1976). Since no allegation has been made that the voyage was extended, allowing the shifting time to be included in demurrage would result in double compensation for the owner.

Thus, we hold that the parties, by the specific language of their agreement, intended to exclude shifting time from demurrage.